CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
OCT 12 2005
JOHN F. [signature], CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| VANESSA M. CARTER, | ) | CASE NO. 4:05CV00014 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's claim for a period of disability and disability income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416 and 423 at the final level of the sequential evaluation, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. For the reasons that follow, the court will recommend that an order enter remanding the case to the Commissioner for further proceedings under Sentence 4 of 42 U.S.C. § 405(g).

This case should not long detain the court because it turns on a rather narrow question, namely whether the Law Judge properly rejected, essentially out-of-hand, the results of WAIS IQ testing performed by a clinical psychologist, as a part of his consultative examination, while the claim was pending before the administration in favor of what would be identified as "Thorndike" IQ test scores administered as a part of standardized testing when the plaintiff was in elementary school. The reason the dispositive question is so focused is that, if plaintiff's intellectual functioning is as low as her recent WAIS IQ scores reveal, the Law Judge conceded that the VE

testified that no jobs would be available to her. (R. 25.)[1]

The best way the undersigned knows how to analyze the decision below is to recount what the record showed occurred in this particular case. Plaintiff was 44 years old at the time of the hearing (42 on the alleged date of onset) with what the Law Judge determined to be a limited education and past relevant work as a rubber products manufacturing worker and sausage production line worker. (R. 16, 24.) Plaintiff claimed that she became disabled on June 4, 2001, which was the date she fell off a ladder and suffered a knee injury, and her insured status will expire on December 31, 2007. (R. 16-17, 25.) According to the VE, plaintiff suffers severe impairments as a result of her knee injury and a back disorder. (R. 21, 25.)

While the Law Judge found plaintiff had a limited education, in that she dropped out of school after the seventh grade and that her school records reveal she had very poor grades. (R. 341-343.) On March 3, 1970, while she was in elementary school, plaintiff underwent an Lorge-Thorndike IQ test which produced a verbal score of 88, a non-verbal score of 83 and a total score of 86. (R. 344.) Other than that provided by the VE at the hearing, which will be addressed later, there is no interpretation of these scores.

On July 9, 2003, which was prior to the administrative hearing in this case, plaintiff underwent a consultative psychological examination by Blanche Williams, Ph.D., a clinical psychologist at the Associates In Mental Health Services, P.C. (R. 347-354.) At that time, a

---

[1] The Law Judge found plaintiff unable to perform her past relevant work and employed the services of a vocational expert (VE) who was asked by the Law Judge to opine both as a vocational expert and, presumably, as a medical expert (ME) on the subject of psychological testing. The point here is that plaintiff proved a *prima facie* case of disability, shifting the burden to the Commissioner to demonstrate that jobs were available to her, given her maladies and their effect. 20 C.F.R. § 404.1520.

2

WAIS IQ test was performed revealing a Verbal IQ of 71, a Performance IQ of 67 and Full Scale IQ of 66. The subtest results also were reported. (*Id.*) The psychologist opined that plaintiff suffered a depressive disorder as a result of the pain she experienced following the injuries she received in her fall, and because of documented cognitive deficits and the inability to concentrate "[t]he usual stresses of competitive work would be quite difficult for her at this time." (R. 352.)

Present and testifying at the administrative hearing was a vocational expert (VE). (R. 389-405.) Under the Commissioner's regulations and the pertinent decisional authority, a VE must be called if the Commissioner wishes to discharge her burden in the sequential analysis where the claimant has been found unable to perform his/her past relevant work and there are non-exertional limitations on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1569, Appendix 2, § 202.00(e); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981). The VE's role is to opine on the availability of work in the economy for a person, like the claimant, with the claimant's maladies and their effects on work-related activities. 20 C.F.R. § 404.1566 (e); *Walker v. Bowen*, 889 F. 2d 47 (4th Cir. 1989).

In part, the VE was asked to serve in that traditional role. (R. 389. 391-395.) However, the VE also was asked to step far beyond the traditional boundaries of vocational testimony to provide opinions in the field of psychology, particularly the interpretation of plaintiff's intellectual functioning, something normally reserved to a medical expert (ME). (R. 395-405.) 20 C.F. R. § 404.1527(f)(2)(iii). Without objection from plaintiff's counsel, the VE, Earl Glosser, testified he had been a licensed psychologist, but that he "gave up" his license. (R. 398.) He was still licensed as a "professional counselor." (*Id.*) Notwithstanding the Law Judge's expressions of his own personal views about the weight to be given to the two sets of IQ scores and plaintiff's

3

intellectual function, the VE revealed, among other things, that "the Wexler [WAIS] is going to be better than the Lawrence Thorndike with the same score. It will be higher on the Thorndike usually. Specifically in this case I don't know." (R. 404.) Undeterred by this evidence, the Law Judge rejected the later WAIS scores, applied the elementary scores and found that plaintiff's intellectual function did not fall within the purview of the Commissioner's Listings under 20 C.F.R. § 404.1525, Appendix 1, § 12.05C, and apparently found them not to be a disabling factor at the final level of the sequential analysis. (R. 21, 25-26, 404-406.)

The undersigned is of the view that the Law Judge legally erred when he attempted to qualify the VE as an ME. Even if that course of action was not legally erroneous, his decision to give more weight to the IQ scores from plaintiff's elementary school years was not supported by the testimony of the person the Law Judge attempted to qualify to render opinions in that specialty. Therefore, the Commissioner's final decision denying benefits should be reversed, and it is so RECOMMENDED.

The question then becomes whether judgment should enter for the plaintiff on the current record. After all, to the extent the WAIS scores validly reflect plaintiff's intellectual function, and there is nothing in the current record which puts in issue their validity apart from the Law Judge's own personal views on the subject, no work would appear available for a person like the plaintiff. In her motion for summary judgment, however, plaintiff seeks only a remand to determine whether her impairments meet or equal the requirements of the Listings, and presumably, if not, whether she, nonetheless, is disabled. Given the state of the extant record, the undersigned RECOMMENDS that the presiding court honor plaintiff's request and REMAND the case for further proceedings according to Sentence 4 of 42 U.S.C. § 405(g) under such other

4

terms as the presiding court might deem appropriate.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

Oct 12, 2005
Date

5

Case 4:05-cv-00014-JLK-BWC   Document 9   Filed 10/12/05   Page 5 of 5   Pageid#: 22